2392, Go New York Tours v. Big Bus Tours, Ltd. Good morning, your honors. I'm Maurice Ross. I represent Go New York Tours, Inc. I would like to preserve two minutes for rebuttal, please. This is an antitrust case. And the fundamental mistake by the district court was in failing to draw all reasonable inferences in favor of the non-moving party. Now, I ask myself every day about this case. What more could I have fled to state a plausible claim? You know, in most cases within this circuit, where there's an allegation of a conspiracy and restraint of trade, the court looks to whether there are plus factors. Well, in this case, I respectfully submit we have the ultimate plus factor. We have an agreement between the alleged conspirators, an agreement that we allege constituted a merger and resulted in a claim of monopolization. Now, the district court... If you could clarify, it seems internally consistent to me. On the one hand, you're saying the two companies merged. On the other hand, the MOU kind of describes the terms about trademark licensing and ticket sales agreement. It seems like an odd thing for a merged entity to negotiate these things within itself. No, Your Honor. Respectfully, the MOU memorializes an intent for these two companies to merge. And they did, in fact, merge. And the complaint alleges a series of subsequent conduct and agreements to facilitate the merger. The MOU doesn't read like a merger agreement. It's much more limited. I agree with that, Your Honor. The MOU itself was an agreement with a term of only six months. But on the ground, observations on the ground supported in the complaint, most importantly by photographic evidence, show that these companies merged. The buses shown carry the intellectual property branding of both companies. Isn't the picture of the logo on the bus consistent with the MOU? No, Your Honor. In fact, the MOU only granted the right of one of the parties to use the intellectual property of the others. The bus carries the branding of both companies. The websites carry the branding of both companies. What happened is way beyond the MOU, which was a six-month agreement, they've now operated as a merged entity. The complaint alleges that they merged not only their intellectual property, but their accounting, their other functions. Now, very importantly, I think one of the allegations that the district court really ignored was what happened with regard to bus stops. In this industry, bus stops are the currency for which are used to obtain customers. And the Department of Transportation awards exclusive rights to bus stops. So each of the market participants have exclusive rights. In this case, the complaint alleges that Gray Line and Big Bus, as part of the merger, agreed to share their bus stops. This is a big deal. And yet Gray Line told the Department of Transportation, oh, we're going to operate again, we're coming back. The fact is Gray Line never came back. The only company operating buses, and this is a crucial point, has been Big Bus. So now my question is, how can you address the Ray Sudakota question? Why wasn't this covered by the prior lawsuit, this claim? It absolutely is a different claim. The prior lawsuit occurred before the merger. The allegations in the prior lawsuit did not involve allegations of merger. Now, it is true that we have alleged in the present suit that as a result of the merger, the conspiracy to exclude Go New York from access to attractions has continued and it's expanded. But the time periods are different, and more importantly, the merger was not part of the prior lawsuit. So Ray Sudakota cannot possibly apply here. That claim would be Ray Sudakota, though, right, the attraction pass? No, I don't believe so, Your Honor, because, again, the time periods are different. And most importantly, as to the attraction pass exclusions, we've argued that because of the merger, that conduct has accentuated. And now they're part of a merged entity. It's one entity making those disparaging comments about Go New York, keeping Go New York from access to the attractions. I fundamentally ask this Court the following. How can the district court, based on the mere allegations of the complaint, have not concluded that we have plausibly alleged a merger, a monopoly power, and a restraint of trade? If you draw all inferences in favor of the non-moving party, I don't think it's a close question. I think what's happened is that district courts respectfully applying Twombly and Iqbal have gone too far and have turned the motion pleading progress into essentially a summary judgment motion. That shouldn't happen. What do we do with the Twombly and Iqbal requirement of plausibility and sort of support? Because sort of bare assertions are insufficient, right? We know that under Twombly, Iqbal, and, frankly, under 12B generally, conclusory assertions without any sort of support are insufficient. So if we look at the MOU or a district judge looks at the MOU and it doesn't support the allegations that say this is a merger, isn't the district judge not only entitled to but required to actually look at the support for the allegation? I agree the district court should have looked at the support for the allegation, but there's plenty of support. We have photographic evidence showing that on the ground these companies have merged and hold themselves out to the public as a single entity. We've alleged that they cross-licensed their intellectual property, that they've combined their operational accounting and other functions. They had to. They couldn't have carried out the MOU without doing that. And we've also alleged, remember, the MOU was a six-month agreement. This merger has continued to this present day. Only Big Bus operates buses to this present day. Gray Line has not operated buses. I believe, Your Honor, respectfully, that Twombly and Iqbal should not require me to have a smoking gun at the pleading stage. It requires me only to ask the court is there a plausible inference that there has been a merger and that these companies have used monopoly power to cause harm to my client and keep my client from access to attractions, but also to fix prices, to fix net rates. We've alleged not only- So the MOU that set that aside does not establish a merger. Your evidence then or the basis for your allegations is the logos on the buses, the pictures. Well, more than that, that only Big Bus is carrying passengers. The two companies market for those passengers. They brand their intellectual property rights together. They've shared their bus stops. They've told the DOT, they've misrepresented to the DOT that Gray Line would be continuing to operate, but that never happened. They've merged their accounting and management functions. And respectfully, we think the MOU, if properly interpreted- That last allegation, the merging of their functions, where is that? It's in the complaint. We've alleged that they had to. In order to carry these passengers who buy tickets, you have to have operational coordination. It's fundamental to how this industry works. You're picking up passengers. You have to know where to unload them, how many you can handle at a given time. There's got to be that sort of cooperation. The question is why haven't we alleged sufficient facts from which a plausible inference of a merger has occurred? I believe the photographs are really the key, Your Honor. We have photographs where they're holding themselves out to the public as one entity, as they do in their marketing. And the fact of the matter is the MOU was a six-month agreement. Now what's happened? Four months later, they're still holding themselves out as one company to the public. You're reserved two minutes for rebuttal. Thank you, Your Honor. Mr. Seibert, are you ready? May it please the court, Your Honors. Richard Seibert. I represent Twin America and Gray Line. My co-counsel, Mr. Sartorius, is seated at the appellee's table. He represents Big Bus. We submitted a joint brief, so I'm the designated hitter. I'd like to address first the antitrust issues that Judge Ramos's decision below addressed. In a nutshell, Your Honors, my clients are accused of monopolizing and restraining trade in a market they exited. That's the very definition of implausible. Let me address the Sherman Act Section 2 claim first because that's the easiest. Both Judge Ramos and years earlier Judge Kaplan rejected plaintiff's strange allegation that the defendants have a shared monopoly. That's not only implausible, it's legally impossible. I used to teach antitrust, and I would tell my students you need two to tango to violate Section 1. You need an agreement. But you can violate Section 2 all by yourself. Conversely, there's no such thing as a shared monopoly. That would be a duopoly, not a monopoly, which would be a Section 1 claim, not Section 2. And this circuit so held 50 years ago in the FLM case, and that was confirmed in the Brittany case by the Southern District just three years ago. How about plaintiff's allegations that post-date Judge Kaplan's initial decision? Your Honor, I'm so sorry. I couldn't hear you. How about plaintiff's allegations that post-date Judge Kaplan's initial decision? The allegation of events that post-date his decision? Yeah, if you could focus on those. Sure. That really goes to the race judicata claim, I believe. And that's addressed squarely by the Waldman decision that was cited in our brief? Your friend just emphasized the activities that happened after the race judicata decision. So I don't know that it's entirely satisfying just to say that it was decided already. The nature of the claims is somewhat different. Well, I think the decision in Waldman is that it's got to be something more substantial to create a new claim. The events that come later may be more relevant to the merger claim. There are allegations that Gray Lines essentially folded its operations into Big Bus. The signage on the side of the bus, the agreement with respect to the stops. Why aren't all of those things – why don't those things give rise to a plausible merger claim, applying the 1206 standards? I would urge that on their face they are not plausible. What about giving up exclusivity on the bus stops and letting the competitor use your otherwise exclusive bus stops? Isn't that some indication of a merger? That would be classic Parker v. Brown state action immunity. The New York City Department of Transportation would have had to approve that. On a 12B6 motion, you might be right, but isn't it plausible that it's also evident of an anti-competitive merger? I don't think so, Your Honor. The MOU makes clear – and keep in mind the MOU was executed in the wake of the pandemic. It's understandable that the market collapsed. Gray Line exited the market. The MOU, which is a single page, simply allows Gray Line to sell Big Bus tickets. And the trademark on the buses, which my esteemed friend here makes so much of, that's just – The other side acknowledges that the MOU on its face is limited, but it is in the context of these other things. Gray Line stopped operating its buses. It gave up its spots. It folded its operations. Arguably, I'm not saying that's what the evidence will show in the end, but at the pleading stage, why isn't that sufficient? Because even on the pleadings, even if you accept the allegations are true, on its face, this is not a merger and it's not a joint venture. It's not a sharing of assets. By the plain language – Why isn't it? Well, there's – You say it's not. Why isn't it? There's no sharing of management. There are no common shareholders. There's no common ownership. There's no common officers and directors. There's no common employees. The only thing you have is a cross-licensing of trademarks, which is common in the business world, and it would be expected precisely because Gray Line had exited the merger. Excuse me. Gray Line had exited the market. There are simply no indicia, either apparent or alleged, of a legal merger. At most, this is a joint venture, and I think at one point it's even referred to as a joint venture in the papers, which again would be a Section 1 claim, not a Section 2 claim. But there's nothing to indicate even that. This is a simple agreement to allow my client to sell big bus tickets, and that's all. On its face, it's not plausible. What's the business reason for that simple agreement? Why do they do it? Because Gray Line stayed in the market selling these multi-attraction packages, and to do that, a component of the multi-attraction packages you have to get from one attraction to another. So transportation is part of it. And Gray Line made the business decision that it didn't want to be in that business anymore. So they basically contracted through the MOU to provide those transportation services through big bus. Okay. There's also, you know, on the Section 2 claim, just to finish up on that, there's a public policy concern here, too. If a mere MOU, which is common in the business world, were held to be a merger, then every Section 1 claim would also be a Section 2 claim. So not only is that implausible, that would probably promote more litigation. You're focusing on the MOU, and they're looking at the MOU plus these other things. I understand. But those don't rise to the level of plus factors. There is nothing, for example, on the face of a cross-licensing of a trademark that suggests a merger or suggests an antitrust violation. Particularly because Gray Line exited the market, there is nothing on the face of keeping its bus stops and allowing another company to use them for payment. There is nothing to suggest that that's a merger. There's nothing to suggest that's a conspiracy. How about the merged functions that your friend talked about? I'm sorry, sir? How about the merged functions that your friend talked about? Oh, that… They allege that a mere… Keep in mind that the point of this MOU is that one company, Gray Line, is selling another company's transportation, Big Bus. It's a cross-selling agreement. And what they're saying is that a mere accounting exercise to determine which defendant is due a commission for selling which tickets is somehow evidence of a merger. That doesn't make any sense. If it were a merger, there would be no need to allocate commissions because the merged entity would get everything. So, again, this is an implausible allegation. So, your argument, basically, then, is that the allegations, post-stating the initial decision about the bus stops and the logos and the office functions, are all consistent with implementation of the MOU, not a merger. That's correct. And so the merger allegation is implausible on its face. It is, Your Honor. Okay. Well, and even the market alleged here is implausible. You know, tourists come to New York City, and they have a budget. You know, they decide how to spend it on hotels, on restaurants, on taxis versus the subway, on Broadway shows versus museums. You're running out of time, but let me ask you one question about the attraction passes. So that was decided initially by the district court, and, you know, allegations relating to that up to that time are res judicata. How about afterwards? If the conduct, as your friend alleges, changes and worsens, you know, Gray Line takes over it, is that still res judicata, or is that different? Like, where is the line between a new claim and one that's already decided? Well, I don't think that's an excellent question. I don't think it's entirely clear. The Waldman decision kind of has a flavor of you'll know it when you see it. What was alleged in that case was held not sufficient. And in this case as well, when the alleged additional acts on their face are not antitrust violated, I would say it falls into the same category. It's just not enough. They're basically trying to resuscitate the same claims that Judge Kaplan rejected and then Judge Ramos rejected by taking what is fundamentally an innocent agreement entered into during the pandemic and later continued and saying, oh, that changes everything. Well, it doesn't. My friend here said, what more could he have pled to state a claim? And the answer is nothing, because you don't have a claim. There is no plausible claim here. Thank you, Counselor. Thank you. We'll hear about it. So the argument is that Gray Line exited the market. It got out of that particular transportation business. So it's not a merger. No, they didn't get out of the market. Very important point. Thank you for this question. They stayed in the market. They stayed in the market. The transportation part of it. That's true, but they stayed in the ticket selling part of it. But what's the relevant product market? Isn't it the hop-on, hop-off bus market? Correct, and the sub-market, the attraction pass market as a sub-market. But, Your Honors, this is a classic case. From what I hear, my colleague, my friend says, well, we don't know if they've merged management. We don't know if they share employees. We don't know exactly how these various functions. This is all something that should be the subject of discovery. I submit that it is more than plausible that they have merged their operations. After all, coming back to your question, Gray Line is trying to still make money in this market, but they do it in combination with Big Bus. They are partners in a venture. They have merged their New York operations. They hold themselves out to the public as one unified operation. And, most importantly of all, they are attempting to use that monopoly power to cause injury to competition in the market. They are monopolizing access to attraction passes. They are disparaging Go New York and keeping- What allegations in support of a merger are inconsistent with implementation of the MOU? I think all of the subsequent conduct after this, the MOU was going to expire in six months. It had a six-month agreement. And yet, we've alleged that after that six-month period, Gray Line doesn't operate. All of the passengers get directed to Big Bus. They share the bus stops. They've told the Department of Transportation that Gray Line is going to operate, but that didn't happen. They've merged their accounting and operational activities. They've had to do that to carry the passengers. So, they are holding themselves out as a unified enterprise. It sounds like the timing is the main one that the MOU contemplated a six-month term. But if they continue doing these things without an agreement, that suggests that would be evidence of a de facto merger. I believe that's one of the factors that is evidence of the merger. But it's all this other conduct. It's this day-to-day conduct on the ground where they are operating, sharing their intellectual property, which is really critical. I mean, if Coke and Pepsi started sharing their intellectual property and selling in the same vending machines, you would think that they've merged or they've done something really important. That's what's happened here. This is not the national market, but it's the New York market. This is a market where competition is critical for the benefit of consumers. And what they've done is drastically limited competition in the market to the disadvantage of the public. And when we talk about the public interest, ladies and gentlemen, your honors, the public interest in this day and age is about free markets. I think antitrust, we should have the opportunity to vigorously enforce the antitrust laws and private rights of action so long as the claims are plausible. And I agree that the claims have to be plausible. But I think in this case, respectfully, these claims are more than plausible. They're probable. One question. Counsel, the district court's opinion has a whole header talking about res judicata and spends a great deal of time on res judicata or claim preclusion. But your briefing doesn't address it. Any reason we shouldn't find any contest to that forfeited? No, we address it in a footnote. It just says it's wrong. Counsel, hang on one second. We have a lot of case law that says a footnote's not enough. We have really clear case law that literally says a footnote's not enough. Why is that footnote enough? I think because respectfully to Judge Ramos, I think the finding of res judicata is so clearly wrong that it deserved no more than a footnote. Okay. Thank you. Thank you, your honors. Thank you, counsel. Thank you both. We'll take the case under advisement.